## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### JULIAN T. CHRISTIAN V. COMMONWEALTH.

#### March 30, 1922.

1. INDICTMENT AND INFORMATION—*Punctuation—Omission of Comma —Prohibition Act.*—In a prosecution for unlawfully selling intoxicating liquors, the indictment was in the form authorized by section 7 of the prohibition act. Accused demurred to the indictment on the grounds that a comma was omitted after defendant's name, as well as after the word "indictment."
   *Held:* That the overruling of the demurrer was not error.

2. INTOXICATING LIQUORS—*Prohibition Act—Ardent Spirits.*—Accused was convicted of unlawfully selling intoxicating liquors under the prohibition act. The evidence for the Commonwealth established the sale of the liquor by accused and showed that the liquor produced intoxication in those who drank it, though there was also evidence that the effect produced by the liquor resembled the effect produced by narcotics instead of by alcohol.
   *Held:* That the proofs were sufficient to sustain the conviction.

3. INTOXICATING LIQUORS—*Prohibition Act—"Ardent Spirits"—Definition.*—Although the words "ardent spirits" usually designate a liquid containing alcohol, it is clear that as used in the prohibition act the General Assembly intended to enlarge the meaning of the words, as applied to prosecutions under the act, and liquids, mixtures, and preparations which will produce intoxication, as defined in the act, are clearly condemned, whether they contain alcohol or not.

4. INTOXICATING LIQUORS—*Police Power—Prohibition of Beverages not Containing Alcohol.*—It is clearly within the police power of the State to prohibit the sale of other beverages which produce intoxication and thus affect the public health, peace and morals as it is to prohibit the sale of alcoholic beverages which also produce disastrous results when used to excess.

Error to a judgment of the Circuit Court of Mathews county.

*Affirmed.*

The opinion states the case.

*C. S. Smith, Jr.,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused has been found guilty of unlawfully selling intoxicating liquors under the prohibition act (Acts 1918, page 578), and is here assigning error.

[1] Among the errors assigned is that the court erred in overruling the demurrer to the indictment, which is in the form authorized by section 7 of the act, and the grounds assigned for the demurrer are that a comma is omitted after the defendant's name, as well as after the word "indictment."

"If reasons were as plenty as blackberries," it would be unnecessary to give one to sustain this ruling of the trial court, which is so obviously correct.

[2, 3] The accused was the proprietor of a store at Mathews Courthouse, and sold to his customers a beverage which the evidence of the Commonwealth sufficiently shows produced intoxication in those who drank it, though there is also evidence that the effect resembled the effect produced by narcotics instead of by alcohol. The name chosen for the concoction—"Highball"—is certainly suggestive of alcohol.

The other errors assigned are one in substance, and require a construction of certain sections of the act. Section 1 reads thus: "The words ardent spirits, as used in this act, shall be construed to embrace alcohol, brandy, whiskey, rum, gin, wine, porter, ale, beer, all malt liquors, all malt beverages, absinthe and all compounds or mixtures of any of them; all compounds or mixtures of any of them with any vegetable or other substance; alcoholic bitters, bit-

ters containing alcohol; also all liquids, mixtures or preparations, whether patented or otherwise, which will produce intoxication, fruits preserved in ardent spirits, and all beverages containing more than one-half of one per centum of alcohol by volume, except as herein provided."

The beverage was not analyzed, and the accused contends in support of his motion for a new trial upon the ground that the verdict was contrary to the law and the evidence, and of his assignments of error as to the instructions given and refused, that under the act it is essential for the Commonwealth to prove that the beverage sold contained alcohol. That the words "ardent spirits," as usually construed, designate a liquid containing alcohol, cannot be doubted, so that the question presented by this record is whether or not the mixture which was sold by the accused is a beverage condemned by the act and is ardent spirits, the sale of which is thereby prohibited.

It is clear, however, from section 1 that the usual construction of the words "ardent spirits" cannot be adopted, because the act itself construes these words, and among the beverages defined by the statute as ardent spirits, which definition is separated by a semicolon from the preceding words of the section which refer altogether to those beverages which contain alcohol, are beverages thus defined: "also all liquids, mixtures or preparations, whether patented or otherwise, which will produce intoxication." So that if a beverage will produce intoxication, its sale is prohibited. Then the act also, in section 49, defines "intoxication" thus: "Any person who has drunk enough ardent spirits to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed, for the purposes of this act, to be intoxicated, * * *." For the purposes of the act, then, both ardent spirits and intoxication are defined. It seems to us that a mere recital of these provisions is sufficient to

demonstrate that the General Assembly intended to enlarge the meaning of these words, as applied to prosecutions under the act. It, therefore, follows that liquids, mixtures and preparations which will produce intoxication, as defined in the act, are clearly condemned, whether they contain alcohol or not. We are confirmed in this view by section 58, which reads thus: "This entire act shall be deemed an·exercise of the police power of the State for the protection of the State, for the protection of the public health, peace and morals, and the prevention of the sale and use of ardent spirits, and all of its provisions shall be liberally construed to effect these objects."

[4] It is as clearly within the police power of the State to prohibit the sale of other beverages which produce intoxication and thus affect the public health, peace and morals as it is to prohibit the sale of alcoholic beverages which also produce disastrous results when used to excess. The decisive question here presented is whether or not the General Assembly has thus condemned beverages which produce intoxication, although they may not contain alcohol. Construing the words of these statutes according to their clear and generally accepted meaning, it seems to us perfectly apparent, under the evidence in this case, that the liquid mixture which the accused sold to his customers produced intoxication, and hence is within the condemnation of the act. It is not perfectly clear that it contained alcohol. It is thus described: The accused bought, on an average of once a month, five gallon cans of a liquid marked "turpentine." This liquid was dispensed either with a soft drink known to the trade as "Green River," or with another, known as "Pepsi-Cola." The other mixture labeled "turpentine" was poured into an ordinary glass to about the depth of an inch, and then the glass was filled with "Green River" or "Pepsi-Cola," and the resulting concoction was sold at twenty-five cents a glass. The medical testimony is

that turpentine contains no alcohol, and that if poured an inch deep in an ordinary glass and used as a beverage, it would probably poison or kill the person who drank it; and that no responsible drug house in the United States would sell narcotics in five-gallon cans. So that we conclude that the designation "turpentine" was chosen for purposes of deception, and the record leaves us ignorant as to just what it was. According to the witness, it produced intoxication as defined by the act, and we find no error in the procedure.

*Affirmed.*